**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| **PEOPLE OF GUAM,** | **Criminal Case No. CF0109-24** |
| | GPD Report Nos. 24-03889 / |
| v. | 24-03672 |
| | |
| **DOMINGO CHARGUALAF MENDIOLA** | |
| (*aka* **DOMINGO SYLVESTER CHARGUALAF MENDIOLA**) | **DECISION AND ORDER** |
| (*aka* **DING**), | **GRANTING THE PEOPLE'S** |
| DOB: 07/15/1987 | **MOTION FOR RELIEF** |
| | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on February 14, 2025 for hearing on the People of Guam's ("the People's") Motion for Relief ("Motion"). Special Assistant Attorney General Curtis Van De Veld represents the People, and Attorney Marsil Johnson represents Domingo Chargualaf Mendiola (*aka* Domingo Sylvester Chargualaf Mendiola) (*aka* Ding) ("Defendant"). Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order and **GRANTS** the People's Motion.

## BACKGROUND

Defendant is indicted on Charge One: Aggravated Murder (as a 1st Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony, Charge Two: First Degree Robbery (as a 1st Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony, Charge Three: Conspiracy to Commit Robbery (as a 1st Degree Felony), Charge Four: Theft of a Motor Vehicle (as a 2nd Degree Felony), Charge Five: Possession of a Schedule II Controlled Substance (as a 3rd Degree Felony), Charge Six (Two Counts): Possession of a Firearm Without a Firearms Identification Card (as a 3rd Degree Felony), Charge Seven: Destruction of Evidence (as a Misdemeanor), and Charge Eight: Violation of a Court Order (as a Misdemeanor). See Second Superseding Indictment (Nov. 26, 2024).

Decision and Order Granting the People's Motion for Relief
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 1 of 5

The charges stem from a deadly shooting on February 14, 2024. See Magistrate's Complaint (Feb. 20, 2024). Defendant allegedly fatally shot Sumittra Lairopi ("Victim") outside the Thai Thai Restaurant in Tamuning, before taking off with the Victim's car. Id. Guam Police Department officers located the Victim's car near Defendant's house, and found methamphetamine inside the vehicle. Id.

Dr. Jeffrey Nine performed the Victim's autopsy, and the People intend to call him as an expert-witness during their case-in-chief. See People's Third Amended Witness List (Oct. 21, 2024). Dr. Jeffrey Nine served as the licensed Medical Examiner of Guam from November 2022 until May 2024, when he moved from Guam to Ohio. See Declaration of Dr. Jeffrey Nine (Jan. 23, 2025). This move was done so that Dr. Jeffrey Nine could assist his wife and son, who are each undergoing continuous medical treatments in Ohio. Id. Due to these circumstances, Dr. Jeffrey Nine cannot travel to Guam for purposes of giving testimony without endangering his wife and son's ongoing medical care and treatment. Id.

On January 23, 2025, the People filed their Motion for Relief. The People request that Dr. Jeffrey Nine be permitted to provide remote testimony, either by means of live, two-way, audio-video telecommunication or by deposition in Ohio, the latter of which would require a lengthy trial continuance. See Motion at 1-4 (Jan. 23, 2025). The People prefer an audio-video telecommunication method over a deposition because of the many challenges involved with transferring the Defendant, his attorney, and a security team to/from Ohio. Id. at 3-4.

On January 28, 2025, Defendant filed his Opposition to the People's Motion ("Opposition"). Defendant challenges the necessity of any remote testimony, claiming it serves no important public policy and was requested merely for convenience. See Opposition at 3-4 (Jan. 28, 2025). Defendant also claims the People failed to assure reliability of telecommunication testimony because the procedure requested is too vague. Id. at 5-6. Defendant also challenges the People's proposed alternative deposition of Dr. Jeffrey Nine, claiming this would violate his right to a public trial and unjustifiably delay his trial. Id. at 6-8.

The Court held a hearing on February 14, 2025. After hearing the arguments of the parties, the Court took the matter under advisement.

Decision and Order Granting the People's Motion for Relief
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 2 of 5

## DISCUSSION

### I.  Preliminary Law:

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him". See U.S. Const. amend. VI. If applied literally, the Sixth Amendment would exclude any statement made by a declarant not present at trial. However, doing so would nullify virtually every hearsay exception, so Courts have long rejected this blanket view of the Confrontation Clause as "too extreme". See *Ohio v. Roberts*, 448 U.S. 56, 63 (1980).

Rather, Courts have specifically focused on "the right of cross-examination", which is recognized as the "primary interest secured" by the Sixth Amendment. See *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). "The Confrontation Clause reflects a preference for face-to-face confrontation at trial" during said cross-examination. Id. at 1076. This is because a face-to-face confrontation provides the accused not only an opportunity to test a witness's memory, but also for the jury to gauge the witness's demeanor on the stand and determine whether their testimony is worthy of belief. Guam has followed suit, and generally requires that witnesses testify in-person, in the defendant's presence, and before an empaneled jury.

However, this "preference" for in-person testimony is not absolute and "must occasionally give way to considerations of public policy and the necessities of the case". See *Maryland v. Craig*, 497 U.S. 836, 849 (1990). Even in criminal cases, exceptions have been made where testimony taken outside of the jury's physical presence is admitted for their consideration. For example, in *Maryland v. Craig*, the Supreme Court admitted testimony via a one-way closed circuit television procedure. Id. at 852. In making their ruling, the Supreme Court recognized that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Id. at 850.

Courts have applied the two-part analysis of *Craig* to two-way, remote video testimony such as the one requested here. See *United States v. Carter*, 907 F.3d 1199, 1206 (9th Cir. 2018) ["We now make clear that a defendant's right to physically confront an adverse witness (whether child or adult)

Decision and Order Granting the People's Motion for Relief
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 3 of 5

cannot be compromised by permitting the witness to testify by video (whether one-way or two-way) unless *Craig*'s standard is satisfied."]. This two-part test is applied on a case-by-case basis. See *People v. Coulthard*, 90 Cal.App.5th 743, 772 (Cal. Ct. App. 6th 2023).

**II. Dr. Jeffrey Nine may testify remotely via live, two-way, audio-video telecommunication without violating Defendant's Confrontation Clause rights because remote testimony is necessary to further the important state interest of public health, and reliability of the testimony is otherwise assured.**

Here, the critical inquiries are: (1) whether the procedure of taking Dr. Jeffrey Nine's testimony remotely is necessary to further an important state interest, and if so, (2) whether testimony obtained through a live, two-way, audio-video telecommunication is otherwise assured reliable. The People bear the burden of proving both of these inquiries in the affirmative. See *People v. Coulthard*, 90 Cal.App.5th 743, 774 (Cal. Ct. App. 6th 2023).

Regarding the necessity prong of the *Craig* analysis, the People have met their burden as taking Dr. Jeffrey Nine's testimony remotely is necessary to further the important state interest of public health. See *Selkin v. State Board for Professional Medical Conduct*, 63 F.Supp.2d 397, 402 (S.D.N.Y. 1999) (holding that states have an important interest in "protecting the health of its citizens").

Here, Dr. Jeffrey Nine's testimony is critical to the People's case because he personally performed the autopsy on Victim. However, Dr. Jeffrey Nine gave sworn statements about how his wife and son are both undergoing significant medical treatments multiple times per week in Ohio. See Declaration of Dr. Jeffrey Nine (Jan. 23, 2025). Due to their health issues, Dr. Jeffrey Nine's wife and son both require his physical presence and continual assistance in their medical battles. Id. This physical presence and assistance would be halted for several critical days if Dr. Jeffrey Nine were forced to physically testify in Guam. Guam is over 7,500 miles from Ohio, resulting in significant travel time between the two locations. Because his presence is indefinitely needed in Ohio, Dr. Jeffrey Nine cannot physically testify in Guam without endangering the health of several family members. However, his testimony remains critical for the People's case. Therefore, this testimony must necessarily be taken remotely to further the important state interest of public health.

Decision and Order Granting the People's Motion for Relief
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 4 of 5

As for the reliability prong of the *Craig* analysis, the People have also met their burden in assuring that testimony received via live, two-way, audio-video telecommunication is reliable. This procedure preserves elements critical to the confrontation clause, which have a combined effect of ensuring reliability of the evidence. For example, any such telecommunication testimony will be taken under an oath of truth, and Dr. Jeffrey Nine has expressed his understanding and willingness to take this oath. See Declaration of Dr. Jeffrey Nine (Jan. 23, 2025). Any telecommunication testimony will also be subject to contemporaneous cross-examination, and Defendant will be given just as much freedom to cross-examine Dr. Jeffrey Nine as if he were to testify physically in Guam. Furthermore, the judge, jury, and Defendant will all be able to view the demeanor and body language of Dr. Jeffrey Nine as he testifies. Although Dr. Jeffrey Nine won't be physically present, jurors will retain the ability to look Dr. Jeffrey Nine in his eyes as he testifies, judge his demeanor on the stand and the manner in which he testifies, and ultimately determine whether his testimony is worthy of belief.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the People's Motion. Dr. Jeffrey Nine is permitted to testify remotely via live, two-way, audio-video telecommunication because this remote testimony is necessary to further the important state interest of public health, and this method of testifying is otherwise assured reliable.

**IT IS SO ORDERED** this <u>Feb. 27, 2025</u>.

**HONORABLE ALBERTO C. LAMORENA, III**
**Presiding Judge, Superior Court of Guam**

**SERVICE VIA EMAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

AG, J. Martinez

Date: 2/27/25 Time: 10:43am

Antonio C. Cruz

Deputy Clerk, Superior Court of Guam

Decision and Order Granting the People's Motion for Relief
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 5 of 5